BYRON KERSTETTER V. THE STATE.

No. 16369.    Delivered February 7, 1934.
Rehearing Denied March 28, 1934.

The opinion states the case.

*W. W. Ballard,* of Wichita Falls, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft; the punishment, confinement in the penitentiary for two years.

Appellant insists that the evidence is not sufficient to support the conviction.

The owner of the stolen property, T. E. Johnson, left his home on the morning of March 13, 1933, and returned the 16th day of the same month.   Upon his arrival home on the date last mentioned he found that a quantity of his clothing had been taken from his residence.   Among the articles stolen were three suits, two pairs of pants, a rain coat, five shirts, a baseball suit, a bath robe, a pair of slippers and a sweater.   The aggregate value of the clothing was in excess of fifty dollars.   Appellant, Marvin Monroe, and Mr. Johnson lived in the same town.   H. M. Murphy lived next door to Monroe.   He testified that on the night of March 13, 1933, he saw appellant and Marvin Monroe together in Monroe's house, and that later during the night he saw Monroe spreading some clothing down on the bed.   Glenn Long, who was present in the house with Murphy,

testified that he saw appellant and Monroe leave Monroe's home about 8 o'clock with two girls; that they blew the light out when they left; and that he did not hear any voices in the house until about 11 o'clock the same night. He testified, however, that Monroe and appellant returned to the house about 9 o'clock that night. He testified, further, that about 11 o'clock he saw appellant and Monroe enter the house, and later saw Monroe wrapping up some clothing, which looked like two suits. Miss Bertha Monroe, sister of Marvin Monroe, testified that appellant came to their home about 8 o'clock on the night of March 13, 1933, and with Marvin Monroe took her and Miss Essie Patterson to a dance. She testified that the men did not go inside when they reached the dance and that she did not see them any more until about 11:30 that night. She said when she reached home she was unable to find the oil lamp that she had left in the house. After she had been at home a little while appellant and Marvin Monroe came into the house. We quote from her testimony as follows: "No one came with them— they had a bundle—I did not look to see what was in it—not a very big bundle. They struck a match—they had the lamp with them. Byron (appellant) had the lamp—I don't know which one had the bundle." Again, she testified that Marvin Monroe was dressed in a pair of pants that she had never seen before. When she asked him in the presence of appellant where he got the pants, he replied that he had gotten them over at appellant's home. She testified that appellant then stated that they were his pants, and that they had gone to his house and gotten them. Further, she testified that appellant and Marvin stated that they had gotten the bundle over at appellant's home. She heard appellant and Marvin leave the house early the following morning. Miss Christine Monroe, who was in the house on the occassion in question, corroborated the witness last mentioned. She said that when appellant and Marvin entered the house appellant was carrying the lamp as well as the bundle.

On the 16th of March, 1933, the chief of police of Electra arrested Marvin Monroe. It was proven by the State, without objection, that Marvin took the officers in the country to a culvert which was near the home of Charlie Raznor, and that they there recovered a bundle of clothing consisting, among other things, of a baseball suit, a belt buckle, two or three shirts, and some neckties. The belt buckle had the initials T. E. J. on it. In the home of E. J. Dobbins the officers found two suits, a pair of trousers, three shirts and a sweater. All of this clothing was taken to the city hall and immediately thereafter Mr. Johnson, the owner, was advised of its presence. He went to

the city hall and got the property, the testimony being to the effect that the clothing was not at the city hall after Mr. Johnson went there in response to information from the officers. Charlie Raznor testified that appellant and Marvin Monroe came to his home in the early morning, and that Monroe was carrying a bundle. E. J. Dobbins testified that Marvin Monroe came to his home about 3 o'clock in the afternoon of March 16th, wearing a light brown suit; that he stayed at his place until 6:30 in the morning and then went to work with him; that the clothing found in his home by the officers had been left there by Marvin Monroe. Mr. Johnson testified that he went to the city hall and took possession of his clothing and property.

Appellant admitted that he was at the home of Marvin Monroe on the night of March 13, 1933. He testified that he went to the dance with Monroe and the two young ladies mentioned, but said that after reaching the dance he and Monroe separated, and that he went back to Monroe's house sometime before midnight, alone. He said he met Monroe as he came around the corner, and that he (Monroe) had a bundle and a lamp. He testified that Monroe carried the bundle into the house and he carried the lamp. He stated that Monroe told the young ladies that he had gotten the clothes at his (appellant's) house; and that he laughed and said: "You know I never had any clothes like that." Again, he testified that he spent the night with Monroe and in the early morning he and Monroe went to Charlie Raznor's home, as he wanted to get a gun from him. He said that Monroe carried the bundle from his home to Raznor's and had it under his arm while they were there, but did not put the bundle under a culvert. Also he testified that after leaving Raznor's he came on to town and did not see Monroe again. He said that when he left him, Monroe still had the bundle under his arm.

The opinion is expressed that the evidence is sufficient.

Appellant brings forward several bills of exception. The motion for new trial was overruled June 9, 1933, and notice of appeal given on the same date. Appellant was granted sixty days from the date last mentioned in which to file his bills of exception. We find in the record no order of extension. The bills of exception were not filed until September 7, 1933. Manifestly, they were filed too late.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We declined originally to consider appellant's bills of exception because not filed in time. By a supplemental transcript it is made to appear that within the time first allowed appellant for preparing and filing bills of exception, an extension order was made by the learned trial judge, and that within the time so granted in said extension, three bills of exception were filed, which are now considered. We observe that said bills of exception were not included in the transcript originally sent to this court, and were themselves brought here by supplemental transcript. It would lighten the labors of this court if the prosecuting attorneys would exercise some degree of supervision over the transcripts that come here to the end that same may contain all matters properly pertaining to the appeal and presented in the court below.

Bill of exceptions No. 1 complains of the refusal of a peremptory instruction based on the proposition that the testimony was not sufficient to show appellant's guilt and connect him with the stolen property. We concluded in our original opinion that the testimony was sufficient. This bill is without merit. Bill of exceptions No. 2 is, in substance, the same as bill No. 1.

Bill of exceptions No. 3 was first brought here without the signature of the trial judge and the qualification which he had put upon the bill. A corrected bill, however, is brought before us by another supplemental transcript. The bill complains of the reception of testimony of the owner of the alleged stolen property, as to its value. The clothing taken was a quantity of personal property, chiefly wearing apparel of various kinds. This bill is qualified by the statement of the trial judge, in effect, that there was no market for property of this kind at Electra where it was stolen, and, this fact being developed, he permitted the testimony complained of in this bill, which embodied, in substance, the original cost price of the articles so alleged to have been stolen,—the length of their use,—and the proportionate value of the articles in question at the time same were taken. Appellant cites no authorities in support of his objection to the reception of this character of testimony as to value. While unquestionably not the most satisfactory proof as to the value of the property, yet in view of the fact that the testimony showed that it had no market value in Electra, the decisions of this court seem to be that the State may then resort to some other standard of value. See Martinez v. State, 16 Texas App., 122; Saddler v. State, 20 Texas App., 196; Cooksie v. State, 26 Texas App., 72; Rollins v. State, 32 Texas Crim. Rep.,

566; Roberts v. State, 61 Texas Crim. Rep., 434; Osborne v. State, 56 S. W., 53; Keipp v. State, 51 Texas Crim. Rep., 419. The value placed upon the property by its owner seemed in each instance to be considerably below its cost, and the aggregate value of all the articles taken appeared to be in the neighborhood of seventy-five dollars. The court told the jury they must believe from the evidence, beyond a reasonable doubt, that its aggregate value exceeded fifty dollars before they could convict him of a felony. We do not believe the bill of exceptions under discussion shows reversible error.

The motion for rehearing will be overruled.

*Overruled.*